# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

**VANTREETA LOCKHART**                                                                     **PLAINTIFF**

**v.**                                                                     **CIVIL ACTION NO.: 4:23-cv-163-JMV**

**COMMISSIONER OF SOCIAL SECURITY**                                                                     **DEFENDANT**

## ORDER

This matter is before the court on Plaintiff's complaint [Doc. No. 1] for judicial review[1] of

the Commissioner of the Social Security Administration's denial of an application for Disability

Insurance Benefits ("DIB"). The undersigned held a hearing on April 9, 2024 [Doc. No. 18]. The

parties have consented to entry of final judgment by the United States Magistrate Judge, with any

appeal to the Court of Appeals for the Fifth Circuit. Having considered the record, the administrative

transcript, the briefs of the parties, and the applicable law, the undersigned finds the Commissioner's

---

[1]      The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

decision is not supported by substantial evidence and should be and is hereby **reversed with instruction to the Administrative Law Judge ("ALJ") to have a medical expert review the entirety of Plaintiff's medical records for the relevant period, and as deemed necessary, obtain an updated Consultative Exam ("CE") in order to formulate an updated Residual Functional Capacity ("RFC") and disability determination.**

## Statement of the Case

Claimant filed an application for DIB on July 7, 2021, alleging disability due to spinal disorders with an onset date of October 18, 2020. An Unfavorable Decision was initially made in this matter on December 30, 2021, and on reconsideration on August 30, 2022. Subsequent thereto, the ALJ granted a request for hearing that occurred (by phone due to COVID-19 considerations) on March 8, 2023, following which the ALJ issued an Unfavorable Decision on March 28, 2023. The Unfavorable decision was timely appealed to the Appeals Council, who affirmed the decision of the ALJ on June 27, 2023.

The ALJ evaluated Plaintiff's claims pursuant to the five-step sequential evaluation process. As a preliminary matter, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2027. Tr. at 17, Finding 1. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of October 18, 2020. Tr. at 17, Finding 2. At step two, the ALJ found that the Plaintiff had the following severe impairments: degenerative disc disease with spondylosis with three surgeries, scoliosis, obesity, and hypertension (20 CFR 404.1520(c)). Tr. at 18, Finding 3. At step three, the ALJ found that none of Plaintiff's impairments, either alone or in combination, met or equaled the

criteria of an impairment at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings). Tr. at 18, Finding 4.

The ALJ then assessed Plaintiff's RFC and found that she has the ability to perform light work as defined in 20 C.F.R. 404.1567(b), except Plaintiff can occasionally climb, balance, stoop, crouch, and kneel. The plaintiff can never crawl or work near hazards. Tr. at 18-23, Finding 5.

At step four, the ALJ found that Plaintiff is capable of performing her past relevant work as a fast-food manager (DOT # 313.374-010). Tr. at 24, Finding 6.

Even though the ALJ found that Plaintiff was able to perform her past work as a fast-food manager, the ALJ considered, whether the plaintiff is able to perform other work. The ALJ found, after consulting with a Vocational Expert ("VE") that Plaintiff could perform certain representative jobs at the light exertional level with Plaintiff's additional limitations that exist in significant numbers in the national economy, such as price maker, garment sorter, and fast-food manager. Tr. at 24-25, Finding 6. Finally, the ALJ found Plaintiff not disabled and denied her application for period of disability and DIB. Tr. at 25, Finding 7.

### Relevant medical and related records

In January 2020, before her onset date, October 18, 2020, or initial application date, July 7, 2021, Plaintiff underwent an MRI, which among findings, reported evidence of postsurgical changes. With respect to L3-4, for example, the following was observed: there is no significant disc disease. No significant stenosis. Tr. at 559.

Plaintiff testified she underwent a third back surgery in June 2020. Tr. at 21.

In October 2020 (around the alleged onset date), Plaintiff went from full-time employment to approximately 20 hours of work per week at Burger King.

On May 3, 2021, Plaintiff was seen by Dr. Gammel for "worsening back pain" and was

referred to PT. Tr. at 19, 283-84.

On May 30, 2021, a CT of the lumbar spine without contrast was performed. Tr. at 427.

On June 7, 2021, Plaintiff again reported severe back pain to Dr. Gammel. Tr. at 289.

On June 21, 2021, Plaintiff reported to Dr. Gammel that her pain was worse. Tr. at 292.

On July 7, 2021, Plaintiff filed for disability, asserting an onset date of October 18, 2020.

On July 15, 2021, and August 26, 2021, Plaintiff again reported back pain and a referral to a neurosurgeon was apparently made. Tr. at 295, 299.

On October 26, 2021, another CT of the lumbar spine was ordered. Tr. at 431, 770.

On November 20, 2021, a CE by Dr. Misquita was conducted. NO medical records were reviewed. An essentially light RFC was assigned. Tr. at 771-78.

On December 20, 2021, the initial DDS determination was made. Medical records from August 28, 2021, to December 3, 2021, were reviewed by the examiner. A light RFC was assigned.

On January 4, 2022, Plaintiff was seen by Dr. Gammel for throbbing pain in both legs. Tr. at 301.

On May 16, 2022, Plaintiff was seen again for pain in her legs. Tr. at 864.

Approximately June 1, 2022, Plaintiff ceased any further employment due to asserted increased back pain.

On June 23, 2022, the second DDS determination was made. Again, essentially a light RFC was assigned. Additional medical records through February 25, 2022, were included in the review. Tr. at 67-72.

On August 15, 2022, Plaintiff was seen for worsening leg pain. Tr. at 866.

On September 29, 2022, Plaintiff was seen for back pain where it was noted she has tried many pain management modalities without success and has had back pain for several years

radiating down her leg. She was referred to pain clinic. Tr. at 869.

On November 8, 2022, Plaintiff was seen at pain clinic: back pain was 10/10 at its worst and not controlled with her then-current medication regimen. She was given these diagnoses: Failed Back Syndrome; Chronic Pain Syndrome; and lumbar radiculopathy. She was also referred to PT. Tr. at 20, 1052,1054-55.

On November 13, 2022, Plaintiff was evaluated in PT as follows: pain is chronic and daily; pain is 6/10 and radiates to leg; Claimant is evaluated as having decreased trunk ROM, difficulty with transfers, gait abnormalities and has high risk of falls as evident by Tinetti Score 18/28; loss of functional mobility is also shown by Oswestry Low Back questionnaire score of 25/50; and skilled PT is required. Tr. at 946.

Plaintiff is seen multiple times by PT (twice per week) until January 4, 2023, when insurance ceases. On discharge, inter alia, short- and long-term goals to reduce high risk of falls had not been met. None of her long-term goals were met. Tr. at 21.

On January 19, 2023, Plaintiff was seen at Pain Clinic. Tr. at 21.

On January 23, 2023, an MRI of lumbar spine was ordered. Report includes among others the following findings (compared to January 2020 MRI) re L3-L4: moderately severe central spinal stenosis and significant right foraminal narrowing. Tr. at 1007-09.

On January 23, 2023, the MSS of Dr. Gammel found multiple, very significant functional limitations.

On February 20, 2023, Plaintiff was seen at pain clinic. Back and leg pain was 8/10 at its worst with an avg. of 7/10. Dr. Besselievre says pain will likely last until death. Pain not managed with current pain medication regimen. Tr. at 1021-24.

On March 8, 2023, Plaintiff was seen for lumbar epidural steroid injection at L3-4 for

severe back pain that had lasted more than 4 weeks and affected ADLs. Other treatments had failed. Tr. at 21, 1015-19.

Of note, after the medical records through February 2022 were reviewed by the last DDS examiner, no CE or DDS examiner reviewed any of Plaintiff's further documented medical treatment to make a functional assessment until Dr. Gammel did so on January 23, 2023, and found essentially disabling functional limitations.[2]

The ALJ found this opinion unpersuasive, stating:

> I did not find the medical opinions of Dr. Gammel at 8F is supported or persuasive because in the relatively few visits in which back pain is discussed, she was working about 20 hours a week at Burger King during this time, so her complaints of pain did not indicate she was unable to sit/stand/walk.

Tr. at 23.

However, the record reflects that Plaintiff was seen multiple times by Dr. Gammel for complaints of back pain, including after she ceased employment altogether. Further, Dr. Gammel is the only physician who formulated an opinion of Plaintiff after she stopped working when her pain escalated to the level of severity such that she required treatment at a pain clinic and repetitive, skilled PT. None of which, per the record of epidural steroidal injection at the L3-4 level, was successful at controlling her pain or, for example, correcting her high-risk fall assessment due to balance problems. And, as referenced above, the DDS examiners did not review any medical records beyond February 2022 – over a year before the ALJ's decision, and the only CE was provided by a physician who examined Plaintiff on a single occasion in November 2021 without the benefit of review of any medical records at all. Also, while the ALJ reports he reviewed "all three Lumbar MRIs in the record", a review of the record does not

---

[2] Dr. Gammel reduced Plaintiff to less than a sedentary capacity, opined that she would be off task more than 25% of the day, and that she would likely miss work about 4 or more days per month due to her impairments or as a result of medical treatment.

reflect 3 MRIs, but instead only one during the relevant period (taken February 1, 2023). And, that MRI, as noted above, reflects what are described as both moderately severe and significant findings of stenosis/narrowing at L3-4; whereas, the January 2020 MRI (albeit outside the relevant period) reflected, for example, apparently nothing of the sort at the L3-4 level.

While the ALJ, on March 23, 2023, found Dr. Gammel's MSS of January 23, 2023, unpersuasive as stated above, he found the DDS examiner's reconsideration opinion at 3A "most persuasively articulates her physical residual functional capacity." He based this assessment on "testimony and the type of work she performed at Burger King." But, as noted above, Plaintiff did not work at all after approximately May/June of 2022, and the DDS examiner only reviewed medical records for her thru February 2022. Moreover, the CE performed by Dr. Misquita, as early as November 2021, was based on review of no medical records of Plaintiff at all.

**The Law and Analysis**

The measuring stick for whether an ALJ has provided an "adequate discussion" of his persuasiveness explanation is whether it enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence. *See,* e.g., *Cooley v. Comm'r of Soc. Sec.*, 2:20-cv-46-RPM, 2021 WL 4221620 (S.D. Miss. Sept. 15, 2021) (citing *Pearson v. Comm'r of Soc. Sec.*, Civil Action No. 1:20-CV-166-HSO-RPM, 2021 WL 3708047, at *5, (S.D. Miss. Aug. 11, 2021)*; Ramirez v. Saul,* No. SA-20-CV-00457-ESC, 2021 WL 2269473, at *6 (W.D. Tex. June 3, 2021); *Todd v. Comm'r of Soc. Sec.,* No. 3:20-cv-1374, 2021 WL 2535580, at *9 (N.D. Ohio June 3, 2021), *report and recommendation adopted,* No. 3:20- v-1374, 2021WL 2530846 (N.D. Ohio June 21, 2021); 5792621 (N.D. Ohio Sept. 29, 2020)).

The Fifth Circuit has also stated that an "ALJ does not need to comment on every piece of evidence, but only must build *an accurate and logical bridge between the evidence and the final determination*." *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010) (emphasis added) (citing *Glomski v. Massanari*, 172 F.Supp.2d 1079, 1082, 77 Soc.Rep.Serv. 305 (E.D. Wis. 2001)).

In this case I find that there is neither an accurate nor a logical bridge between the ALJ's assessment that the DDS examiner's opinion at 3A and/or Dr. Misquita are persuasive and any conclusion that substantial evidence supports the same or the ALJ's decision. As discussed above, the CE of Dr. Misquita was dated as early as November 2021, and was based on review of no medical records of claimant, and the DDS non-examiner's opinion was based only on a records review through February 22, 2022, which was prior to Plaintiff's complete cessation of employment and was made before her condition had apparently deteriorated to the point that she was referred to a pain clinic, diagnosed with chronic pain syndrome, failed back surgery syndrome and lumbar radiculopathy, before she was discharged by PT in December 2022 with a high fall risk and numerous other mobility deficits, was found on MRI in February 2023 to have what would appear to be significantly worse stenosis/narrowing at L3-4 than she had in 2020; was said by her neurologist to probably suffer chronic pain for the remainder of her lifetime; and before she underwent an epidural injection procedure for relief of back pain in March 2023 after "all other modalities of treatment were unsuccessful." Finally, the ALJ's opinion was premised on some apparently erroneous conclusions, as follows: that he had reviewed 3 Lumbar MRIs performed on Plaintiff, and omission of reference to the fact that Plaintiff did not work at all from May/June 2022 through the date of his decision on March 28, 2023.

**THEREFORE, IT IS ORDERED** that the Commissioner's decision is hereby

**REVERSED** and **REMANDED** consistent with the opinion above.

**SO ORDERED**, this 17th day of April, 2024.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**